UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JORGE E. RODRIQUEZ,<br><br>                    Petitioner,<br><br>vs.<br><br>RANDY VALLEY,<br><br>                    Respondent. | Case No. 1:23-cv-00237-DKG<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

In response to the Petition for Writ of Habeas Corpus filed by Jorge Rodriquez
(Petitioner or Rodriquez) (Dkt. 3), Respondent Randy Valley (Respondent) filed a
Motion for Partial Summary Dismissal (Dkt. 12). The Court granted that motion,
dismissing Claims 4, 6, 7, and 9 with prejudice on procedural default grounds.

Briefing on the merits of Claims 1, 2, 3, 5, and 8 is complete. Dkts. 23, 27. The
Court will now consider the remaining claims and reconsider dismissal of the
procedurally defaulted claims. All named parties have consented to the jurisdiction of a
United States Magistrate Judge to enter final orders in this case. Dkt. 7. *See* 28 U.S.C. §
636(c) and Fed. R. Civ. P. 73.

The Court takes judicial notice of records from Petitioner's state court proceedings
lodged by the parties and related case records from the Idaho Supreme Court online
public register of actions. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550,

**MEMORANDUM DECISION AND ORDER - 1**

551 (9th Cir. 2006). The "state court record" does not include those documents Petitioner has submitted for the first time in this action, which are addressed below. *See* Dkts. 27, 28, 31.

Having reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying and dismissing the Petition for Writ of Habeas Corpus.

## BACKGROUND

In a criminal case in the Fourth Judicial District Court in Boise County, Idaho, Petitioner was convicted by jury of domestic battery in the presence of a child. On October 3, 2017, he was sentenced to a unified prison term of eight years fixed, with ten years indeterminate.

The victim, Petitioner's wife, Autumn Rodriquez (A.R.), recanted her story of domestic violence, but the prosecution refused to dismiss the case. Several versions of the incident exist. A.R. initially said that, on April 17, 2016, she was breastfeeding their infant daughter when she and Petitioner argued. Petitioner struck her legs while she was feeding the child and later punched her in the face while the child was in another room. State's Lodging D-15 at 2. A.R. suffered a bruise like a boot mark on her legs a hairline fracture to her nose, and two black eyes. *See* State's Lodging A-5.

Several days after the incident, A.R. left her husband and told several people he had punched her in the face. Petitioner was criminally charged.

A.R. later returned to her husband and changed her story. A.R. newly asserted that, during an argument with Petitioner over whether he was having an affair with his ex-girlfriend, the following happened:

> I wanted to look through his phone to look for messages and he refused to let me. I reached for his phone while he was holding it. I couldn't get it out of his hands, so I began tugging on it. As I was pulling back on his phone, the phone hit me in the nose, causing it to bleed.

State's Lodging A-2 at 46-47. A.R. said the leg bruising was from her job as a cashier at Costco, where she was always bumping into flatbed shopping carts. State's Lodging A-4 at 135.

Despite A.R.'s retraction of her initial claims, she returned to the first version of events in her testimony at the preliminary hearing.[1] The following evidence was deemed sufficient probable cause to continue the criminal case against Petitioner. Shortly after the incident, A.R. went to work at Costco. Her boss, Rich Graber, was so stunned by the way she looked, with the bruises under her eyes, he initiated a wellness check on her. State's Lodging C-2 at 53-54. During that interview, they called the Costco employee domestic violence hotline. A.R. decided to go stay with her parents. State's Lodging A-4 at 102. A.R. asked a female supervisor, Joey Flowers, to follow her to the daycare to pick up her daughter because she was so unnerved by the circumstances. *Id*. at 103.

---

[1] Respondent explains that there are several references to the preliminary hearing by the state courts, but a transcript of that hearing was never made a part of the record for appellate review, and it is not a part of this record. *See* Dkt. 23 at 3, n.2. References to testimony at the hearing is from the parties' briefing.

The day A.R. left her husband, she called her father on the way to her parents' house to tell him what happened. *Id.* at 103-04. A.R. also called her mother several times during the same time period. At her parents' home, A.R.'s mother, a nurse, took pictures of A.R.'s broken nose and the boot mark on her leg. *Id.* at 104. A.R. obtained a restraining order against Petitioner. *Id.*

Even though A.R. recanted, prosecutors decided she had been telling the truth the first time and continued the prosecution. Because a criminal offense is not solely an offense against a person, but an offense against the State's citizens, prosecutors may choose to proceed without cooperation from the victim. The state district court refused A.R.'s repeated requests to dismiss the restraining order. *Id.* at 43.

Petitioner and A.R. had a history of marital discord. *See* State's Lodging C-1 at 42. At the preliminary hearing, during cross-examination of A.R., defense counsel Bethany Haase asked, "How many times on average have you attacked your husband, initially aggressing him?" and A.R. answered "about three times a month." Dkt. 3 at 11. A.R. also testified she had been physically violent with Petitioner, including punching and scratching him. *Id.*

Petitioner was represented by several successive public defenders. After Bethany Haase, attorney Robert Chastain took over representation. Petitioner and Chastain seemed to agree that A.R.'s admissions of aggressive behavior in marital disputes was relevant to Petitioner's criminal charge of domestic violence. Petitioner asserts that Chastain had planned to pursue a self-defense theory. *See* Dkt. 27 at 18.

**MEMORANDUM DECISION AND ORDER - 4**

Chastain, however, withdrew because of a conflict of interest, and attorney William Schwartz was assigned to the case. Petitioner was unhappy with Schwartz's work and several times requested that he be appointed a different attorney. The state district court repeatedly gave Petitioner three choices: remain with Schwartz, proceed pro se, or hire a private attorney. Petitioner repeatedly chose to remain with Schwartz.

Petitioner pressed Schwartz to defend the domestic violence charge by using A.R.'s admissions that she was often the aggressor in their physical altercations. Petitioner's preferred theory of defense rested on a video he took on his cellphone that shows one of the couple's altercations. The video was disclosed in pretrial discovery to the prosecutor by his second attorney, Robert Chastain, on July 29, 2016. Dkt. 3-2 at 2.

Petitioner brought this video to Schwartz's attention during pretrial preparation, but Schwartz rejected it as trial evidence. Schwartz also rejected Petitioner's relatives as witnesses who could testify that A.R. was the aggressor in the marital relationship.

Instead, Schwartz worked throughout the trial to build A.R.'s credibility that the accident story was true. Schwartz elicited testimony from A.R. that the prosecutor threatened her with perjury after she changed her story to an accidental injury, and that is why at the preliminary hearing she returned to her original story—that Petitioner punched her. State's Lodging A-4 at ECF p. 138. Schwartz's questions to A.R. at trial emphasized to the jury that, despite the ongoing perjury threat, A.R. was still willing to tell the truth at trial about the accidental injury. *Id*. at ECF pp. 136-38. Petitioner did not testify at trial.

Petitioner's first trial ended in a hung jury—which means that Schwartz's theory likely played a role in causing at least some jurors to have reasonable doubt. The second

trial, which is the subject of this action, resulted in a guilty verdict. Plaintiff filed a Rule 35 motion to reduce his sentence and a direct appeal, with no success.

Petitioner next filed a pro se post-conviction relief petition. The state district judge issued a notice of intent to summarily dismiss the petition. State's Lodging C-2 at 41-115. Petitioner filed an amended complaint in response. The state district judge issued a second notice of intent to summarily dismiss the action. Petitioner filed a supplemental brief with evidentiary exhibits, but the state district judge erroneously determined the response was too late and did not consider the response or evidence offered. The amended post-conviction petition was dismissed upon written order of the court without a response from the State.

Petitioner filed a post-conviction appeal in which he elected to proceed pro se. State's Lodging C-2 at 31-32. The Idaho Court of Appeals affirmed dismissal. State's Lodging D-6. He filed a petition for review in the Idaho Supreme Court.

On post-conviction review, the Idaho Supreme Court disagreed with the decision of the Idaho Court of Appeals that Petitioner's supplemental response and evidence were filed too late and properly omitted by the state district court. State's Lodging D-15 at 15. The omitted supplement contained (1) email correspondence between Petitioner and Schwartz discussing witnesses and a video; (2) various parts of the state court record in the criminal case; (3) a copy of the video; and (4) a second video purportedly showing A.R. "immediately stopping her aggressive behavior after realizing she is being recorded." *See* State's Lodging C-3 at 63.

**MEMORANDUM DECISION AND ORDER - 6**

The Idaho Supreme Court considered the improperly excluded evidence de novo (anew), rather than remand the case for further proceedings in the state district court. The Idaho Supreme Court concluded: "While the district court should have considered Rodriquez's supplemental materials, because those materials failed to articulate any reason why the court should not dismiss the petition, we cannot conclude that the outcome of his post-conviction petition would have been any different if it had." State's Lodging D-15 at 11.

The Idaho Supreme Court rejected all of Petitioner's claims and issued a written opinion affirming dismissal of the post-conviction matter. State's Lodging D-15. Petitioner then filed this federal habeas corpus action.

## REVIEW OF REMAINING CLAIMS

### 1. Standard of Law

Federal habeas corpus relief may be granted when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When the petitioner challenges a state court judgment in which the petitioner's federal claims were adjudicated on the merits, Title 28 U.S.C.§ 2254(d) applies, as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) limits relief to instances where the state court's adjudication of the petitioner's claim:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.   resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence
     presented in the state court proceeding.

28 U.S.C. § 2254(d).

When a petitioner contests the state court's legal conclusions, including

application of the law to the facts, § 2254(d)(1) governs. That subsection consists of two

alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established

federal law "if the state court applies a rule different from the governing law set forth in

[the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court]

[has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694

(2002).

Under the second test, to satisfy the "unreasonable application" clause of

§ 2254(d)(1), a petitioner must show that the state court—although it identified "the

correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably

applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*,

529 U.S. 362, 407 (2000).

A federal court cannot grant habeas relief simply because it concludes in its

independent judgment that the state court's decision is incorrect or wrong; rather, the

state court's application of federal law must be *objectively* unreasonable to warrant relief.

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. The Supreme Court

emphasized that "even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

**MEMORANDUM DECISION AND ORDER - 8**

To meet the "unreasonable application" standard, a "prisoner must show that the state court's decision is so obviously wrong that the error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 592 U.S. 111, 112 (2020) (citing *Richter*, 562 U.S. at 103). This means if *any* fairminded jurist could take a different view from the way the state appellate court resolved the claim, habeas corpus relief is not warranted. *Richter*, 562 U.S. at 103. If *all* fairminded jurists would agree that resolution of the claim was "an error well understood and comprehended in existing law," then relief under § 2254(d)(2) is warranted. *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (citation omitted).

The foregoing standard is AEDPA's § 2254(d)(1) deferential standard. De novo (new) review applies only (1) when the state appellate court did not decide a properly-asserted federal claim; (2) when the state court's factual findings are unreasonable under § 2254(d)(2); or (3) when an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In such a case, as in the pre-AEDPA era, a district court can draw from both United States Supreme Court and circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Under both AEDPA deferential and de novo review, if the factual findings of the state district court are not unreasonable under § 2254(d)(2), the federal district court must apply the presumption of correctness found in § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. In addition, the findings of fact of the state *appellate* courts are entitled to AEDPA deference. *See James v. Ryan,* 733 F.3d 911, 916 (9th Cir.

2013) (noting that *Johnson* "does not require us to ignore a state court's explicit explanation of its own decision").

When a petitioner contests the reasonableness of the state court's factual determinations based entirely on the state court record, a federal court must undertake a § 2254(d)(2) analysis. *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *abrogated on other grounds as recognized in Murray v. Schriro*, 745 F.3d 984 (9th Cir. 2014). There are two general ways to challenge factual findings as unreasonable under § 2254(d)(2). "First, a petitioner may challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record. Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (internal citations omitted).

Under § 2254(d)(2) and § 2254(e)(1), a petitioner must show, by clear and convincing evidence, that the state court findings of fact are incorrect *and* unreasonable. If the petitioner cannot meet this burden or does not challenge the state court fact finding, the Court presumes state court findings of fact are correct. § 2254(e)(1). In *Pizzuto v. Yordy*, the Ninth Circuit reiterated the high standard for such a showing:

> Under § 2254(d)(2), we may not characterize a state court's factual determinations as unreasonable "merely because [we] would have reached a different conclusion in the first instance." *Brumfield*, 135 S. Ct. at 2277 (alteration in original) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010)). "Instead, § 2254(d)(2) requires that we accord the state trial court substantial deference." *Id.* "If '[r]easonable minds reviewing the record might disagree about the finding in question, on habeas

**MEMORANDUM DECISION AND ORDER - 10**

> review that does not suffice to supersede the trial court's ...
> determination.'" *Id.* (alterations in original) (quoting *Wood*,
> 558 U.S. at 301, 130 S.Ct. 841).

947 F.3d at 530.

If a state court's factual determination is unreasonable, or if there are no state court factual findings and the claim is properly before the court, the federal district court is not limited by § 2254(e)(1) and may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

*Strickland v. Washington*, 466 U.S. 668 (1984), defines the standard for Sixth Amendment ineffective assistance of trial counsel claims. A petitioner asserting ineffective assistance must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions is "highly deferential":

> It is all too tempting for a defendant to second-guess
> counsel's assistance after conviction or adverse sentence, and
> it is all too easy for a court, examining counsel's defense after
> it has proved unsuccessful, to conclude that a particular act or
> omission of counsel was unreasonable. A fair assessment of
> attorney performance requires that every effort be made to
> eliminate the distorting effects of hindsight, to reconstruct the
> circumstances of counsel's challenged conduct, and to
> evaluate the conduct from counsel's perspective at the time.

> Because of the difficulties inherent in making the evaluation,
> a court must indulge a strong presumption that counsel's
> conduct falls within the wide range of reasonable professional
> assistance; that is, the defendant must overcome the
> presumption that, under the circumstances, the challenged
> action might be considered sound trial strategy. There are
> countless ways to provide effective assistance in any given
> case. Even the best criminal defense attorneys would not
> defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Under the prejudice prong of *Strickland*, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. Rather, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The *Strickland* Court instructed:

> In making this determination, a court hearing an
> ineffectiveness claim must consider the totality of the
> evidence before the judge or jury…. Taking the unaffected
> findings as a given, and taking due account of the effect of the
> errors on the remaining findings, a court making the prejudice
> inquiry must ask if the defendant has met the burden of
> showing that the decision reached would reasonably likely
> have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

The foregoing standard, giving deference to counsel's decisionmaking, is the de novo standard of review. Another layer of deference—to the state court decision—is

afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims

on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application
> of the *Strickland* standard was unreasonable. This is different
> from asking whether defense counsel's performance fell
> below *Strickland*'s standard. Were that the inquiry, the
> analysis would be no different than if, for example, this Court
> were adjudicating a *Strickland* claim on direct review of a
> criminal conviction in a United States district court. Under
> AEDPA, though, it is a necessary premise that the two
> questions are different. For purposes of § 2254(d)(1), "an
> unreasonable application of federal law is different from an
> incorrect application of federal law." *Williams*, *supra*, at 410,
> 120 S.Ct. 1495. A state court must be granted a deference and
> latitude that are not in operation when the case involves
> review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. In other words, when evaluating a claim of ineffective

assistance of counsel in a federal habeas proceeding under § 2254(d)(1), the Court's

review of how the state appellate court decided that claim is "doubly deferential." *Cullen*

*v. Pinholster*, 563 U.S. 170, 190 (2011).

## 2. Petitioner's New Evidence

Generally, the merits of the claims in a federal habeas corpus petition are decided

on the record that was before the state court. *Pinholster*, 563 U.S. at 180. Petitioner has

submitted extra-record evidence consisting of a video of a marital altercation and

photographs of injuries allegedly inflicted by A.R. in this action. Dkt. 27-1. He has

focused his arguments on the video, with little elaboration on the photographs.

Respondent argues that Petitioner has failed to show that the habeas corpus record should

be expanded. Dkt. 28. Petitioner must meet the standard for bringing new evidence on

federal habeas review under 28 U.S.C. § 2254(e)(2), including a showing that he

attempted, in a proper way, to develop the factual basis of the claim in state court.

Petitioner asserts that he properly presented the video in the state post-conviction

action. He explained to the state district court in the summation of his amended petition

why the video was not attached—the video was on a thumb drive and he was unable to

make copies of the electronic device because of his status as a pro se prisoner, but he

intended to present it at an evidentiary hearing. Dkt. 27 at 23.

Assuming without deciding that Petitioner, a pro se prisoner, exercised diligence

in trying to present the video to the state courts in the only way he could, and therefore it

can be made part of the habeas record here, this Court has reviewed Petitioner's video.

Dkt. 27-1. The date the video was taken is unclear. Petitioner and his relatives (whose

nearly-identical affidavits all appear to have been written by Petitioner) say that the video

was taken before the criminal incident. The date of the charged incident is April 17, 2016.

The date showing in the video's metadata is April 28, 2016, but that could be a copy date.

The date Petitioner was arrested was April 29, 2016.

The video taken on Petitioner's phone shows him walk toward A.R., who is in

another room. The audio is garbled, but Petitioner appears to verbally provoke A.R. Next,

A.R. approaches Petitioner and the audio captures the sound of her repeatedly slapping

him with both hands in the chest area, but the camera angle does not show the slapping.

Throughout the incident, Petitioner is laughing. Finally, A.R. withdraws from the

incident. Docket 27-1. Petitioner explained to Schwartz: "'Despite my laughter, caused

by, unbelief of the way she was histarically [sic] and aggressively acting', My Videos

**MEMORANDUM DECISION AND ORDER - 14**

will show not only how she was the aggressor in our domestic disputes but also 'highly'
create reasonable doubt within the case." State's Lodging C-3 at 63.

As to the photographs Petitioner presents here, there appears to be no reason that
he could not have presented them for consideration at every level of state court review.
Therefore, it does not appear he can meet § 2254(e)(2) to have them considered here.
Alternatively, the Court will consider them together with all other evidence on de novo
review.

### 3. Discussion

#### A. The Common Denominators in all Claims: Lack of Facts to Support a Self-Defense Theory

The claims now at issue allege that trial counsel William Schwartz performed
ineffectively under the Sixth Amendment by not investigating and presenting witnesses
and evidence in support of a self-defense theory or a hybrid accident/self-defense theory.
The Idaho Supreme Court addressed these claims on the merits in *Rodriquez v. State*, 524
P.3d 913 (Idaho 2023) (*Rodriquez II* or State's Lodging D-15). Applying *Strickland*, the
Idaho Supreme Court concluded that Petitioner failed to show deficient performance
and/or prejudice.

All of Petitioner's remaining ineffective assistance claims challenge—directly or
indirectly—his counsel's strategy and tactics. The law is clear that "appointed counsel,
and not his client, is in charge of the choice of trial tactics and the theory of defense."
*United States v. Wadsworth*, 830 F.2d 1500, 1509 (9th Cir. 1987) (citing *Henry v.
Mississippi*, 379 U.S. 443, 451 (1965)). In general, an attorney's tactical decisions about

how to present a defense are not subject to an ineffective assistance of counsel attack. *Wildman v. Johnson,* 261 F.3d 832, 839 (9th Cir. 2001) ("disagreement with trial counsel's tactical decision cannot form the basis for a claim of ineffective assistance of counsel"). *See also Strickland,* 466 U.S. at 697–90 (mere criticism of trial tactics is not sufficient to support a charge of ineffective assistance of counsel); *Gustave v. United States,* 627 F.2d 901, 904 (9th Cir. 1980) (same).

Contrarily, *how* an attorney arrived at the chosen strategy is subject to *Strickland* scrutiny. That is, an attorney is not ineffective for refusing to pursue a certain defense after making a reasonable strategic choice supported by an adequate investigation. *Hendricks v. Calderon*, 70 F.3d 1032, 1036 (9th Cir. 1995).

The *Strickland* Court outlined how to determine whether an investigation was adequate and a strategic decision was reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91.

The chief difficulties with Petitioner's assertion that Schwartz should have investigated and pursued a self-defense theory are that (1) Petitioner has never concisely articulated a set of facts that supports a self-defense theory; and (2) a self-defense theory

and an accident theory are mutually exclusive because they require different legal

elements and facts.

In Petitioner's post-conviction petition, he asserted that the facts were as follows:

> On or about the 17th day of April, 2016, Petitioner and his wife was setting [sic] at the kitchen table discussing the unfounded rumor for most of the day. Petitioner's wife decided that she wanted to view Petitioner's cellphone log. As Petitioner began to stand up, Petitioner's wife aggressively grabbed for his cellphone, and during the midst of her act to grab the cellphone, her nose was somehow accidently struck and began to bleed.

State's Lodging C-1 at 14.

In the notice of intent to dismiss the post-conviction petition, the state district

court observed:

> This claim fails for several reasons. First, Petitioner has failed to present any facts or evidence that the Victim was the initial aggressor on April 17, 2016. His proposed defense of portraying the Victim as the aggressor was from prior incidents where she became physical. Nowhere in his Petition does he allege or set forth any facts showing that the Victim aggressed him on the date in question, or that her injuries were merely the result of Petitioner fending off her attacks. Thus, the claim is bare and conclusory. Second, even if Petitioner had alleged facts showing he had a valid claim for self-defense, he has failed to demonstrate that he "reasonably feared the victim and reasonably believed that the force used was necessary to repel the victim's attack." *Hernandez*, 133 Idaho at 585, 990 P.2d at 751.
> . . .
>
> The decision to not pursue this defense was reasonable given that (a) there are no facts in the record indicating that Petitioner was defending himself from the Victim's attacks on the date at issue and (b) his prior instances of violence could be brought in to rebut his claim of self-defense.

**MEMORANDUM DECISION AND ORDER - 17**

State's Lodging C-1 at 96-97.

After receiving the first notice of intent to dismiss, Petitioner filed an amended

petition with a slightly different yet still vague set of facts:

> On the day of the alleged incident, I the petitioner was
> attempting to remove, avoid and defend myself from my
> wife's aggressive behavior towards myself. I neither struck
> nor hit her out of aggression with the intent [sic] purpose to
> cause bodily harm, or willfully committed a crime of battery,
> as the prosecution misrepresented and portrayed to the jury.

State's Lodging C-2 at 149.

The Idaho Supreme Court outlined the elements of a self-defense theory:

> The criminal jury instruction on self-defense, Idaho Criminal
> Jury Instruction 1517, explains what the defendant must
> prove to show he acted in self-defense:
>
> 1. The defendant must have believed that [the defendant] …
> was in imminent danger of … [bodily harm].
>
> 2. In addition to that belief, the defendant must have believed
> that the action the defendant took was necessary to save [the
> defendant] … from the danger presented.
>
> 3. The circumstances must have been such that a reasonable
> person, under similar circumstances, would have believed that
> [the defendant] … was in imminent danger of … [bodily
> injury] and believed that the action taken was necessary.
>
> 4. The defendant must have acted only in response to that
> danger and not for some other motivation.
>
> 5. When there is no longer any reasonable appearance of
> danger, the right of (self-defense) … ends.
>
> ICJI 1517.

State's Lodging D-15 at 20-21.

**MEMORANDUM DECISION AND ORDER - 18**

The Idaho Supreme Court determined that Petitioner failed to show "any factual support or argument to address the elements for self-defense." State's Lodging D-15 at 21. In particular, Petitioner did not allege facts showing that he reasonably feared A.R., that he believed he was in imminent danger at the time of the incident, or that he reasonably believed force used was necessary to repel A.R.'s attack. *Id*. at 17. It is clear from the factual descriptions Petitioner presented in the post-conviction record that he is alleging he did *not* strike or hit her or take any intentional action against her—which is what distinguishes a self-defense theory from an accidental injury theory. The Idaho Supreme Court noted that Petitioner's only evidence to prove a self-defense argument was the video of the prior incident, which was insufficient to meet the elements of that defense. *Id*. at 21.

In response to the deficiencies in Petitioner's version of facts identified by the state post-conviction courts, he alleged for the first time in this federal habeas corpus action that "he was *in fear of bodily harm* when Mrs. Rodriquez attacked him, because she has a propensity for doing so, and that her nose was struck when he was attempting to defend from her aggressive behavior towards himself on that alleged day." Dkt. 3 at 10 (emphasis added). Petitioner did *not* allege in his post-conviction action that he was in fear of bodily harm (*see* State's Lodgings C-1, C-2, and C-3). Nor has Petitioner provided any actual facts that would support his new assertion that he was "in fear of bodily harm" at the time of the incident. Rather, his statement is merely a bare recitation of the elements of Idaho self-defense theory, devoid of supporting facts, drafted after the state courts notified him that the "fear of bodily harm" element was missing from his facts.

MEMORANDUM DECISION AND ORDER - 19

Further, Petitioner is not permitted to raise new facts in this action without meeting § 2254(e)(2). He has not shown he could not have provided these facts to the state district court.

The Court will now address Petitioner's particular claims and explain why his lack of facts about the charged incident and the exclusivity of the defense theories at issue foreclose federal habeas corpus relief.

B.  Petitioner's Sister's Potential Testimony (Claim 8)

Claim 8 is that Schwartz failed to conduct an adequate investigation into a self-defense theory by not interviewing Petitioner's sister, Isabelle Rodriguez-Geary (Isabelle). Isabelle would have testified at trial that A.R. had a "propensity for violence" and was the aggressor in the couple's domestic violence incidents. *See* Dkt. 3 at 8, 22. Isabelle's Affidavit says that she saw video footage of A.R. attacking Petitioner (on an undisclosed date). State's Lodging C-1 at 185-187.

From an email exchange between Petitioner and Schwartz, the Idaho Supreme Court determined that Schwartz considered but decided not to call Isabelle as a witness at trial. Schwartz said in his email that (1) the deadline for disclosing witnesses had passed and he did not want to open the door for the prosecution to disclose late witnesses; (2) he preferred to elicit testimony from the victim about her prior acts of violence upon Petitioner, not from Isabelle; and (3) he did not know Isabelle or what she would say, and calling her as a trial witness would be "way too dangerous for no additional benefit." State's Lodging D-15 at 13. In addition, the Idaho Supreme Court reasoned that Schwartz had employed a rational trial strategy by not calling witnesses who could open the door to

MEMORANDUM DECISION AND ORDER - 20

Petitioner's prior conduct and twelve prior convictions for violent offenses—which he did not want introduced. *Id*. at 14. The Idaho Supreme Court observed: "Each rationale the attorney gave falls within the textbook definition of tactical decisions and appears to be reasonable on its face." *Id*.

Petitioner disputes the reasonableness of these findings and conclusions. He argues that Isabelle would have been a late-disclosed witness and Schwartz would not have known the content of her testimony only because he failed to perform a timely investigation. But certain circumstances in a criminal case show that an investigation down one avenue can be unnecessary. Here, Petitioner has not shown that he himself provided Schwartz with sufficient facts to support the elements of a self-defense claim. The Idaho Supreme Court noted this absence of facts:

> Even when he described the altercation in his petition for post-conviction relief, Rodriquez continued to claim that his "wife aggressively grabbed for his cellphone, and during the midst of her act to grab the cellphone, her nose was somehow accidently struck and began to bleed."

State's Lodging D-15 at 16-17. With an absence of facts to support a self-defense theory from Petitioner, and with A.R.'s testimony favoring an accident theory, Schwartz was not required to investigate witnesses who saw videos depicting A.R. acting aggressively toward Petitioner on other occasions.

Petitioner next asserts that the Idaho Supreme Court should not have labeled Schwartz's stated intent to question A.R., rather than Isabelle,  about A.R.'s violent behavior a "tactical or strategic" decision, because Schwartz did not ever elicit such testimony from A.R. at trial. Petitioner thought it was important for Schwartz to place

**MEMORANDUM DECISION AND ORDER - 21**

before the jury A.R.'s admissions from the preliminary hearing that she scratched and

punched him and was the aggressor in past domestic violence incidents. But the fact that

Schwartz deviated from his email to Petitioner does diminish the fact that Schwartz

presented a different reasonable defense throughout trial. Schwartz did not perform

deficiently by choosing not to solicit testimony about A.R.'s acts of violence because it

was not relevant to the chosen theory of defense—an accident—and it would have

detracted from Schwartz's planned tactic of building, not destroying, A.R.'s credibility

about the accident testimony.

The state court record shows that Schwartz's tactics included *not* painting the

victim as a violent aggressor, but, rather, portraying her as a person who was credible and

was telling the truth at trial—which included correcting her previous lies about Petitioner

hitting her. Schwartz solicited testimony from A.R. that she was concerned about

Petitioner having an affair with his ex-girlfriend, that she pulled the phone from

Petitioner's hands, and that it hit her in the nose. A.R. said that she lied about Petitioner

hitting her in retaliation for a suspected affair.

Schwartz argued to the jury: "The prosecutor challenges [the victim's] credibility

when she testified in front of you that this situation happened as a result of an accident.

State's Lodging A-5 at ECF p. 21. Schwartz further argued: "[The victim] recanted

because it was the right thing to do because she had made a false statement to begin

with." *Id*. at ECF p. 22. Schwartz bolstered his argument with expert testimony from the

State's witness: "There was an accident with the cell phone. Dr. Petersen admitted a

**MEMORANDUM DECISION AND ORDER - 22**

cellphone could cause that injury." *Id.* at ECF p. 22. Testimony that the victim previously

had been the aggressor in other domestic skirmishes did not fit this theory of defense.

Petitioner also argues that the Idaho Supreme Court was wrong in determining

that, had Schwartz called Isabelle as a witness to testify about A.R.'s propensity for

domestic violence, such testimony would have opened the door Petitioner's prior conduct

and "twelve prior convictions" for violent offenses.[2]

Petitioner asserts he does not have twelve prior convictions for violent offenses,

but only one previous felony conviction from the year 2005, and a few misdemeanors

prior to 2005. *See* State's Lodging D-15 at 14. He argues that the 2005 conviction is too

old to have been admitted at his 2018 trial. However, Idaho Rule of Evidence 609(b)

provides that a conviction that is more than 10 years old can be admitted if (1) its

probative value substantially outweighs its prejudicial effect, and (2) reasonable written

notice is given to the defendant that the State intends to seek its admission.

In *State v. Hurn*, the Washington Court of Appeals explained why similar

domestic violence convictions are often admitted in cases where the victim has recanted:

> In cases involving domestic violence, admission of the
> defendant's prior acts of domestic violence may be
> admissible to assist the jury in evaluating the victim's
> credibility. *State v. Magers,* 164 Wn.2d 174, 186, 189 P.3d
> 126 (2008) (lead opinion of Alexander, C.J.) ("evidence that

---

[2] *See* State's Lodging A-4 at 25-26 (the state district court denied Petitioner's release on bond between conviction and sentencing, noting, "He's got a prior, the very same charge. He's got 19 misdemeanor convictions, and he's got two failures to appear.").

The Court takes judicial notice of Idaho Supreme Court register of actions for Case CR-2005-9801. *See* https://portal-idaho.tylertech.cloud/odysseyportal/Home/WorkspaceMode?p=0 (Cr-2005-9801)(accessed 11/24/2015). The register of actions is attached to this Order as an exhibit.

**MEMORANDUM DECISION AND ORDER - 23**

[the defendant] had been arrested for domestic violence ... was relevant to enable the jury to assess the credibility of [the victim], who gave conflicting statements"), 164 Wn.2d at 194 (concurring opinion of Madsen, J.) ("evidence of prior acts ... offered to explain recantation by a victim of domestic violence may be admissible under ER 404(b)"); *State v. Grant,* 83 Wn.App. 98, 107–08, 920 P.2d 609 (1996). The justification for admitting evidence of a defendant's prior acts of domestic violence is to "assist the jury in judging the credibility of a recanting victim" who has provided "conflicting statements" about the defendant's conduct. *Maqers,* 164 Wn.2d at 186–87 (affirming trial court's ruling admitting evidence of prior acts of violence because victim who testified that alleged misconduct had not occurred previously given a conflicting statement). However, "because the risk of unfair prejudice is very high [in domestic violence cases]," "the admissibility of prior acts of domestic violence [is confined] to cases where the State has established their overriding probative value, such as to explain a witness's otherwise inexplicable recantation or conflicting account of events." *Gunderson,* 181 Wn.2d at 925 (reversing trial court's ruling admitting prior acts of violence because alleged victim, who testified that the alleged misconduct had not occurred, had never given an "inconsistent" statement).

*State v. Hurn*, 191 Wash. App. 1035, 2015 WL 8158402 at *6 (2015) (footnote omitted).

Setting aside the factual question of whether Petitioner has been convicted of misdemeanor battery convictions as the Idaho Supreme Court stated, this Court concludes the 2005 conviction alone would have been harmful to a self-defense theory. Given the risk the exception in Rule 609(b) presents for admissibility of older similar felonies and their relevance in cases where a victim has recanted, this Court concludes that the Idaho Supreme Court was not unreasonable in determining that the past crime could have been admitted if Schwartz had called Isabelle as a witness in support of a self-defense theory.

**MEMORANDUM DECISION AND ORDER - 24**

Further, Isabelle could have inadvertently testified about harmful facts if subject to cross-examination. Schwartz obviously knew from experience that family member witnesses would be viewed by the jury as having a bias in favor of Petitioner. In addition, if A.R. felt attacked by a line of questioning about her aggressive behavior, she may have testified in an unexpected and harmful way.

Petitioner cannot show deficient performance by pointing to a different theory of defense. Moreover, because Petitioner's version of facts presented to the state courts in post-conviction proceedings did not meet every element of self-defense, the Court concludes that the accidental injury defense was the better theory of defense. Accordingly, the Idaho Supreme Court concluded, and this Court agrees, that Petitioner pointed to nothing to suggest Schwartz's decision not to call Isabelle was due to inadequate preparation or ignorance of the law, rather than rejection of a self-defense theory, which is a matter of strategy. State's Lodging D-16 at 14-15. On this factual record, the decision on Claim 8 is not an unreasonable application of the deficient performance prong of *Strickland.*

Turning to the prejudice prong of *Strickland*, the Idaho Supreme Court determined that "[n]one of Rodriquez's proposed witnesses"—including Isabelle—witnessed the altercation at issue, and the video footage of A.R. attacking Petitioner was from a different day and therefore irrelevant. State's Lodging D-15 at 15, 21. Petitioner points to no facts in the record to rebut the conclusion that there were no witnesses to the altercation that resulted in the 2018 criminal charge. Given that character witnesses were

not relevant to an accidental injury theory, this Court concludes that the Idaho Supreme

Court's decision on the prejudice prong of *Strickland* was not unreasonable.

The fact that Petitioner's preferred evidence *may have been* admitted under a self-

defense theory, or even under a hybrid theory does not equal success under *Strickland*. A

defense attorney must only present a reasonable defense, which Schwartz did. Where

reasonable jurists could disagree on the highest state court's ruling on deficient

performance or prejudice, as here, habeas corpus relief is not warranted.

Under either the AEDPA standard, where the Idaho Supreme Court's decision is

owed double deference, or upon de novo review, and with or without the video of the

prior altercation and photographs of Petitioner's prior injuries inflicted by A.R, the Court

concludes that Claim 8—failure to investigate or present Isabelle's testimony—is subject

to denial on the merits for failure to meet the *Strickland* standard.

## C.  Petitioner's Father's Potential Testimony (Claim 1)

The Idaho Supreme Court found that the state district court and the intermediate

appellate court had not addressed the Affidavit Jorge Rodriquez, Sr. (Rodriquez Sr.) at

all. State's Lodging D-5 at 15. This claim has two subclaims. On its own de novo review

for harmless error, the Idaho Supreme Court evaluated the first subclaim that Schwartz

failed to investigate and call Rodriquez Sr. as a trial witness to testify that A.R. had a

reputation for being aggressive toward Petitioner. *Id.* at 26., The Idaho Supreme Court

summarized the portion of the Affidavit relevant to this subclaim as follows:

> Rodriquez, Sr., … recounted a conflict between his son and
> A.R. in which he alleged that A.R. "violently assault[ed] my
> son for no apparent reason other than she didn't like what my

> son would say or how he would respond to her." There is no date in the affidavit to suggest when Rodriquez, Sr., allegedly witnessed this altercation and the statement also includes Rodriquez, Sr.'s speculation about why A.R. allegedly assaulted Rodriquez. Rodriquez, Sr., also referenced the video that Isabelle and Maria reviewed, explaining he "physically observed the video photage [sic] of my son being violently assulted [sic] by A.R., as he is attempting to deflect and remove himself from the assaults[,] asking her to please stop."

State's Lodging D-15 at 15-16.

The Idaho Supreme Court concluded that "Rodriquez failed to show that the affidavit from his father contained any admissible evidence or information that raised a genuine issue of material fact sufficient to preclude summary disposition of his petition." *Id*. at 16. That court further determined that the lower courts' failure to address the claim was harmless error, concluding that Petitioner's substantial rights were not affected by the district court's failure to consider it. *Id*. at 16.

Even assuming that some of Rodriquez Sr.'s testimony would have been admissible under a different theory of defense, this Court concludes that the Affidavit shows nothing more than an alternative theory of defense was possible. But because Petitioner's and A.R.'s version of events did not support the elements of a self-defense theory, Schwartz chose a different and more reasonable defense. No deficient performance has been shown under either the federal deferential or de novo standard of review.

The second subsection of Claim 1 is based on the following portion of the Affidavit of Rodriquez Sr.:

**MEMORANDUM DECISION AND ORDER - 27**

> I could overhear Mr. Schwartz raising his voice to my son, becoming irate, using vulgar language, and being very unprofessional. After a moment, I witnessed Mr. Schwartz open the door telling my son to get out of his office and said [sic] "your evidence is not coming in, I'm done talking about the videos, now get out of my office."

State's Lodging D-15 at 15.

The Idaho Supreme Court held: "This conversation is inadmissible hearsay and it falls within no applicable exception. I.R.E. 802." *Id.* While this conclusion is true, this Court recognizes that Petitioner likely was attempting to use this evidence only to inform the state post-conviction courts that his father could have testified at a post-conviction evidentiary hearing that Schwartz's performance was deficient, including verbal abuse of Petitioner and failure to adequately consider the video. It seems clear that it was *not* Petitioner's intention to assert that this portion of the affidavit was potential trial testimony, as the Idaho Supreme Court assumed.

But even if Schwartz lost his temper with Petitioner and ordered him out of the office over their video discussion, the entire record reflects that Schwartz had a different and reasonable theory of the defense, making the video unnecessary. An instance of verbal abuse does not show that Schwartz's performance was deficient.

For all of the foregoing reasons, the Idaho Supreme Court's decision regarding the Rodriguez Sr. testimony is not contrary to, or an unreasonable application of, *Strickland*. Nor does Claim 1 warrant relief under a de novo standard because this claim is yet another challenge to Schwartz's reasonable strategic and tactical decisions.

**MEMORANDUM DECISION AND ORDER - 28**

D.  <u>Self-Defense Theory (Claim 2)</u>

Claim 2 is that Schwartz failed to properly investigate and present a self-defense theory. Petitioner argues that Schwartz presented an "unbelievably weak defense … of Mrs. Rodriquez being struck by her own causing, in the nose, by a "cell phone" causing her injury." Dkt. 27 at 20. Petitioner says "no logical mind would agree that this weak defense could be soundly strategic or more plausible" than a self-defense argument. *Id.* But Petitioner's own description of the incident supports Schwartz's decision. The Idaho Supreme Court noted:

> Even when he described the altercation in his petition for post-conviction relief, Rodriquez continued to claim that his "wife aggressively grabbed for his cellphone, and during the midst of her act to grab the cellphone, her nose was somehow accidently struck and began to bleed."

State's Lodging D-15 at 16-17.

A defense attorney is permitted to "choose between two available yet conflicting defenses." *Turk v. White*, 116 F.3d 1264, 1267 (9th Cir. 1997) (holding defense counsel's "selection of the self-defense theory was reasonable and obviated his need to investigate Turk's claims of incompetency, for once counsel reasonably elects to pursue one defense theory, 'the need for further investigation [of the other theory] may be considerably diminished or eliminated altogether'" (brackets in *Turk*) (quoting *Strickland*, 466 U.S. at 691)); *Hendricks*, 70 F.3d  at 1040 (9th Cir. 1995) ("Once [counsel] made the reasonable strategic decision to keep evidence of the other murders out, and with it Dr. Carson's testimony, there was no need to investigate evidence corroborating that testimony."). The

Idaho Supreme Court's decision on this claim was reasonable, and habeas corpus relief is not warranted under either a deferential or a de novo standard.

E. <u>A.R.'s Preliminary Hearing Admissions (Claim 3)</u>

Claim 3 is that trial counsel failed to present at trial A.R.'s preliminary hearing admissions that she had been physically violent with Petitioner during their marriage. The Idaho Supreme Court concluded that evidence of A.R.'s aggression "was not admissible because it was not (1) generally relevant, nor was it (2) specifically relevant because Petitioner had not raised a credible claim of self-defense or alleged a sufficient factual basis of the elements of self-defense." State's Lodging D-15 at 17. The Supreme Court reasoned:

> Rodriquez's defense at trial centered on the claim that A.R. suffered an accidental injury. He never proffered any claim or evidence that, inasmuch as A.R. was the "initial aggressor," her injuries were incurred because he was reasonably acting in self-defense. In short, self-defense played no role in his theory of the case. Indeed, A.R.'s testimony at trial supported the "accidental injury" theory: she testified that either the injury was accidental or caused by her work environment and that she lied to a co-worker, her parents, the nurse at the doctor's office, and the police by telling them Rodriquez caused the injuries. Rodriquez never admitted to causing any injuries to A.R. as part of his defense at trial. Even when he described the altercation in his petition for post-conviction relief, Rodriquez continued to claim that his "wife aggressively grabbed for his cellphone, and during the midst of her act to grab the cellphone, her nose was somehow accidently struck and began to bleed."

State's Lodging D-15 at 16-17.

Based upon Petitioner's own allegations of fact asserted on post-conviction review, this Court concludes that the Idaho Supreme Court made a reasonable distinction

between an accidental injury where neither party is at fault and an injury affirmatively caused to another in the course of acting in self-defense. Petitioner is mixing up two different legal defenses with his vague statement that A.R.'s nose was somehow accidently struck.

Schwartz acted in an objectively reasonable manner in choosing between one or the other defense. A hybrid defense would have resulted in confusing jury instructions and a contradictory closing argument. For example, Schwartz would have had to argue that petitioner did not intentionally touch Petitioner, but if he did intentionally touch her, then it was an accident. Self-defense is an intentional act; an accident is mutually exclusive because it is a non-intentional act. This Court agrees with Respondent that "[i]t thus made perfect sense for Schwartz to fully embrace A.R.'s helpful trial testimony, which mirrored Rodriquez's own deflationary account of the incident, and pursue an accidental-injury defense." State's Lodging A-5 at 22.

The Idaho Supreme Court also concluded that Schwartz's decision "not to present this evidence was clearly strategic." State's Lodging D-15 at 18. The Supreme Court cited *State v. Paz*, 798 P.2d 1, 23 (1990) (relying on *Booth v. Maryland*, 482 U.S. 496, 507 (1987)), pointing out the strategic risks of attacking the victim's character before the jury.[3]

---

[3] *Paz* and *Booth* were overruled on grounds not applicable here by *Payne v. Tennessee*, 501 U.S. 808 (1991), which held that the Eighth Amendment erects no per se bar to the admission of victim impact statements in capital cases.

**MEMORANDUM DECISION AND ORDER - 31**

Petitioner has not shown that the Idaho Supreme Court's opinion on Claim 3—that Schwartz failed to present at trial A.R.'s preliminary hearing testimony about her aggressive behavior—is an unreasonable application of *Strickland* on the deficient performance prong of *Strickland*. Nor has Petitioner shown deficient performance under a de novo review standard. Accordingly, habeas corpus relief is not warranted.

### F. The Video (Claim 5)

Claim 5 is that trial counsel failed to investigate and admit into evidence the "exculpatory" video evidence. On de novo review, the Idaho Supreme Court found the video irrelevant and inadmissible. State's Lodging D-15 at 21. To the extent that Petitioner sought to admit the video specifically "so that the jury could 'draw an inference that the alleged victim acted consistently with that trait on the occasion in question and to show that she was the initial aggressor,'" the court found that "[a]dmitting evidence of a prior altercation to show that A.R. has a propensity for violence is exactly the type of inference we do not permit juries to hear." *Id*. at 18 (emphasis original).

Petitioner argues that the Idaho Supreme Court wrongly decided the admissibility issue. Petitioner is certain he could have introduced the video into evidence. Petitioner's argument presupposes that Schwartz should have used a self-defense theory, because character of A.R. was not relevant to the accidental injury theory that was actually presented at trial and would not have been admitted under that theory.

Under a self-defense theory, Petitioner would have been permitted to bring forward witnesses to testify about A.R.'s character or propensity for violence only by

reputation or opinion. Id. R. Evid. 405(a). Only during *cross-examination* of the character

witness is a party permitted an inquiry into relevant specific instances of the person's

conduct. Id. R. Evid. 405(a). If *Petitioner* was calling witnesses to testify about A.R.'s

character, then *he* would not be the party cross-examining his witnesses; hence, he would

not have been able to introduce the specific instances either by video or through

testimony. *See State v. Custodio*, 30 P.3d 975, 982 (Idaho Ct. App. 2001) (the court

refused the defendant's request to permit him to offer evidence of prior specific acts of

violence by the victim, reasoning that "[p]roof of a victim's violent character does not

show that the victim was the first aggressor in a particular conflict"); *State v. Godwin*,

436 P.3d 1252 (2019) (the Idaho Supreme Court declined to modify the *Custodio* rule

and held that the trial court properly refused to allow the defendant to support his self-

defense theory by calling a witness to testify that the victim the defendant shot had

pointed a gun at other persons on other occasions).

In *Marr v. State*, 408 P.3d 31, 35 (Idaho 2017), the district court found that the

defense attorney was ineffective for failing to discover and admit testimony from a law

enforcement officer of the victim's *reputation* for aggression when intoxicated, because

such evidence was "directly relevant to Marr's claim that he was attacked by Jones when

she was intoxicated and that he acted in self-defense" under Idaho Rule of Evidence

404(a)(2) and 405(a). 408 P.3d at 36. The Idaho Supreme Court held that the district

court correctly found that the officer's testimony about Jones would have been admissible

at trial, and would have supported Marr's contention that he acted in self-defense.

**MEMORANDUM DECISION AND ORDER - 33**

But, contrary to the facts in Petitioner's case, at Marr's post-conviction hearing, Marr's defense attorney testified that she simply missed the victim's reputation for aggression fact in her investigation, which means it was not a strategic or tactical decision. *Marr*, 408 P.3d at 34. The district court concluded that "[a]ny reasonable attorney would have presented this evidence to bolster her client's claim of self-defense," and the Idaho Supreme Court agreed. *Id.* at 37.

Here, Schwartz's decision to omit the video was clearly strategic, made upon the basis of insufficient facts to meet the elements of a self-defense theory from A.R. and Petitioner. Reasonable attorneys could have defended on a self-defense theory or the accidental injury theory that Schwartz selected.

The Court reaches the same conclusion on Petitioner's photographs showing prior injuries inflicted by A.R. They do not fill the gaps in the version of events given by A.R. and Petitioner, and, thus, would not have been helpful to Petitioner in meeting all elements of a self-defense theory.

On the other hand, as Petitioner correctly argues, the victim's character is deemed an essential element of a self-defense theory defense. This permits a defendant to introduce relevant specific past instances of the victim's conduct only or the purpose of showing the specific elements that the defendant's knowledge of prior incidents formed the basis of his fear of the victim and informed his belief that self-defense was necessary to repel the victim's attack in the spur of the moment.

In *State v. Hernandez*, 990 P.2d 742 (Idaho Ct. App. 1999), which Petitioner cites, the court explained use of specific incident evidence in a self-defense theory:

**MEMORANDUM DECISION AND ORDER - 34**

> [E]vidence of the defendant's awareness of the victim's violent reputation or behavior *is* necessary foundation when character evidence is offered to support a different element of the defense of self-defense or defense of others—that the defendant reasonably feared the victim and reasonably believed that the force used was necessary to repel the victim's attack. When evidence of a victim's violent or aggressive nature is offered for this second purpose, the evidence is admissible only if it is shown that the defendant was aware of the victim's violent character, for otherwise the defendant's actions could not have been influenced by it. *See* Annotation, *supra* at § 7. It is worth observing that, when the evidence is used for this second purpose, Rule 404(a) is entirely inapplicable because the character evidence is not being offered "for the purpose of proving that the [victim] acted in conformity therewith on a particular occasion." *See Arrasmith, supra; Keiser,* 57 F.3d at 853; *State v. Bland,* 337 N.W.2d 378, 382–83 (Minn.1983); *State v. Duncan,* 111 N.M. 354, 805 P.2d 621, 623 (1991); 22 WRIGHT & GRAHAM, *supra* § 5237, at 398.

*Id.* at 750–51 (emphasis in original).

Problematic for Petitioner is the principle that, "[b]efore a defendant may offer either type of character evidence, however, he or she must lay a proper predicate demonstrating some overt act by the victim *at or about the time of the incident* which reasonably indicated to the defendant a need for action in self defense." *Berrios v. State*, 781 So. 2d 455, 457–58 (Fla. Dist. Ct. App. 2001) (emphasis added). As noted above, the Idaho jury instruction on self-defense requires that the defendant must have believed he was in imminent danger of bodily harm. *See* ICJI 1517.

The Idaho Supreme Court found that Petitioner's facts were devoid of anything showing either that A.R. did something *at or about the time of the incident* that caused

**MEMORANDUM DECISION AND ORDER - 35**

him to feel the need to affirmatively act in self-defense (A.R. and Petitioner agreed that she reached for his cell phone, and Petitioner denies striking or hitting her nose intentionally). Therefore, there is not a sufficient factual foundation in the record to show that the state district court would have permitted Petitioner to introduce Rule 405 evidence, even if Petitioner had convinced Schwartz to assert a self-defense on his behalf.

Further, even if Petitioner would have been able to show the video to the jury, its admission may have backfired. Because Petitioner seems to verbally provoke A.R. and A.R.'s slaps cause laughter in the video, the jury may have determined that Petitioner was simply trying to create his own favorable evidence to defend against anticipated domestic violence charges.

Petitioner has not persuasively shown that the Idaho Supreme Court's analysis under Idaho law was erroneous or unreasonable. On the record before the Idaho Courts, or even on the supplemental evidence Petitioner submitted here, this Court cannot conclude that Schwartz performed deficiently by rejecting Petitioner's video as trial evidence. Under deferential review, Petitioner fails to show entitlement to habeas relief on Claim 5 on the basis of either unreasonable findings of fact or an unreasonable application of the law by the Idaho Supreme Court. Under de novo review, the claim also fails, because Schwartz did not perform deficiently by omitting the video as trial evidence.

## REQUEST FOR RECONSIDERATION OF PROCEDURAL DEFAULT

Petitioner asks the Court to reconsider the decision that Claims 4, 6, 7, and 9 are procedurally defaulted. These claims were defaulted at the appellate stage of proceedings.

**MEMORANDUM DECISION AND ORDER - 36**

After the Idaho Court of Appeals affirmed the state district court's summary dismissal of the post-conviction petition, Petitioner attempted to raise these additional ineffective assistance claims in his petition for review to the Idaho Supreme Court. State's Lodging D-12 at 13-17. The Idaho Supreme Court found that these claims constituted "a series of new arguments that were not part of his initial appeal of his post-conviction relief case as heard by the Court of Appeals, including juror bias and constructive denial of counsel," and concluded: "These issues are not properly before us and we do not consider them." *Id.* at 2 n.1.

Under Idaho law it is clear that the Idaho Supreme Court will not consider claims that were not raised in an initial appeal to the Idaho Court of Appeals. *Centers v. Yehezkely*, 706 P.2d 105 (Idaho Ct. App. 1985). There is nothing in Idaho precedent suggesting a practice or trend of addressing claims presented for the first time in a petition for review before the Idaho Supreme Court. *See, e.g., Cooper v. Board of Professional Discipline of Idaho State Bd. of Medicine*, 4 P.3d 561, 568 (Idaho 2000)*; Wood v. Wood*, 855 P.2d 473, 477-78 (Idaho Ct. App. 1993). This procedural rule is not intertwined with any federal constitutional issue. Therefore, it is an adequate and independent reason underlying the procedural default.

Petitioner's other arguments in his Reply raise nothing new that would cause the Court to change its decision that Claims 4, 6, 7, and 9 are procedurally defaulted. The exception in *Martinez v. Ryan,* 566 U.S. 1 (2012), applies only to ineffective assistance of trial counsel claims (Claims 6, 7, and 9), and only when the procedural default occurred in initial post-conviction proceedings, not on appeal, as here.

**MEMORANDUM DECISION AND ORDER - 37**

Petitioner also argues that the Idaho Supreme Court's review transgressed state case law requiring an appellate court to "examine[] the entire record" and "determine whether a genuine issue of fact exists based on the record," when a post-conviction petition has been dismissed without an evidentiary hearing. Dkt. 27 at 16. He argues that the Idaho Supreme Court wrongly required him to "restate each and every claim" in his briefing.

Petitioner relies on *Dunlap v. State*, 894 P.2d 134, 137 (Ct. App. 1995), where the Court observed: "On appeal from the summary dismissal of a post-conviction application, we examine the entire record and construe all factual allegations in favor of the applicant to determine if a genuine issue of material fact exists which, if resolved in the applicant's favor, would entitle him to the requested relief." Petitioner's argument is an incorrect interpretation of the law. Simply because the Idaho Supreme Court must *review* the *entire record* on post-conviction appellate review does not mean that court must consider any and all possible claims arising from the record that were not specifically included in the appellate brief.

Petitioner also argues that the federal court should not hold a lay person to an exacting standard when determining whether that person has complied with exhaustion requirements. *Id*. Congress intended that AEDPA be a strict standard, and this Court is without jurisdiction to change the exhaustion rule. To show "cause" for a procedural default, a pro se petitioner must state facts showing that an objective factor (not caused by Petitioner or his counsel) impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ignorance of the

**MEMORANDUM DECISION AND ORDER - 38**

legal process is not an objective factor and does not constitute cause for procedural default. *See Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (an illiterate petitioner's complete lack of legal assistance is not cause to excuse a procedural default). Petitioner's failure to raise his claims properly in the Idaho appellate courts because he was uninformed about the law is not an external factor that supports an application of the cause and prejudice exception.

The Court addressed Petitioner's other arguments in its previous Order on procedural default (Dkt. 20), and none warrants reconsideration here.

## CONCLUSION

On reconsideration, the Court concludes that Claims 4, 6, and 7 are procedurally defaulted, and no adequate excuse exists for failing to include them in an appeal to the Idaho Supreme Court.

Claims 1, 2, 3, and 5 are subject to denial and dismissal on the merits, with or without Petitioner's new exhibits, and under either the AEDPA discretionary standard or the de novo standard of review. No state court findings of fact are unreasonable. The Idaho Supreme Court's decision on these ineffective assistance of trial counsel claims is not contrary to, or an unreasonable application of, *Strickland*. To the extent the Court has not addressed every specific argument of Petitioner in this Order, the arguments have been considered and rejected.

## ORDER

**IT IS ORDERED:**

1.  The Petition for Writ of Habeas Corpus (Dkt. 3) is DISMISSED with prejudice.

2.  The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: December 8, 2025

Honorable Debora K. Grasham
United States Magistrate Judge